1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SCOTT JOHNSON,

                             Plaintiff,

     v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                         Defendant.

Case No. 3:15-cv-05337-KLS

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of her

applications for disability insurance and supplemental security income (SSI) benefits. The parties

have consented to have this matter heard by the undersigned Magistrate Judge. *See* 28 U.S.C. §

636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below,

the Court affirms defendant's decision to deny benefits.

FACTUAL AND PROCEDURAL HISTORY

On September 12, 2012, plaintiff filed an application for disability insurance and another

one for SSI benefits, alleging in both applications that he became disabled beginning July 27,

2011. Dkt. 10, Administrative Record (AR) 23. Both applications were denied on initial

administrative review on November 16, 2012, and on reconsideration on February 4, 2013. *Id.* A

hearing was held before an administrative law judge on August 27, 2013, at which plaintiff,

represented by counsel, appeared and testified, as did a vocational expert. AR 45-82.

In a decision dated September 27, 2013, the ALJ determined plaintiff to be not disabled.

ORDER - 1

AR 23-38. Plaintiff's request for review of the ALJ's decision was denied by the Appeals

Council on March 27, 2015, making the ALJ's decision the final decision of the Commissioner.

AR 1; 20 C.F.R. § 404.981, § 416.1481. On May 27, 2015, plaintiff filed a complaint in this

Court seeking judicial review of that decision. Dkt. 3. The administrative record was filed with

the Court on August 3, 2015. Dkt. 10. As the parties have completed their briefing, this matter is

now ripe for the Court's review.

       Plaintiff argues defendant's decision to deny benefits should be reversed and remanded

for an award of benefits because the ALJ erred: (1) in evaluating the medical opinion evidence;

(2) in discounting plaintiff's credibility; (3) in assessing her residual functional capacity; and (4)

in finding her to be capable of performing other jobs existing in significant numbers in the

national economy. For the reasons set forth below, however, the undersigned disagrees that the

ALJ erred as alleged, and therefore affirms defendant's decision.

<u>DISCUSSION</u>

       The Commissioner's determination that a claimant is not disabled must be upheld if the

"proper legal standards" have been applied, and the "substantial evidence in the record as a

whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986);

*see also Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004);

*Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial

evidence will, nevertheless, be set aside if the proper legal standards were not applied in

weighing the evidence and making the decision.") (citing *Brawner v. Secretary of Health and

Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

       Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation

ORDER - 2

omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

I.      The ALJ's Evaluation of the Medical Opinion Evidence

        The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

ORDER - 3

603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An

ORDER - 4

examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

      A.    <u>Dr. Adolphs</u>

In late August 2013, plaintiff's treating physician, Shawna Adolphs, M.D., provided her opinion as to plaintiff's ability to work (AR 545), in regard to which the ALJ found:

> Dr. Adolphs opined the claimant has "very likely" been unable to work due to diabetes, polyneuropathy, and chronic pain, since July 2011. Ex 14F/2. She opined that the claimant has debilitating pain episodes, and that, even if he worked at a full-time sedentary job, he would still miss more than two days of work per month. Ex. 14F/2. Although Dr. Adolphs has been the claimant's treating provider for approximately six months, her opinion is grossly out of proportion to the objective evidence of record, including [examining physician] Dr. [Lisa] Garrison's thorough examination findings with positive signs of symptom exaggeration. In addition, Dr. Adolph's [sic] chart notes reflect repeated normal physical examinations, which are inconsistent with her opined limitations. Ex. 12F. It appears that Dr. Adolphs has relied quite heavily on the claimant's self-reporting, and for reasons stated above, I find that he has poor credibility. For those reasons, I give this opinion little weight.

AR 35. Plaintiff argues these reasons for rejecting Dr. Adolphs's opinion are insufficient. The Court disagrees.

Although plaintiff asserts otherwise, Dr. Adolphs's own treatment notes are for the most part devoid of objective clinical findings supportive of the level of limitation indicated in her August 2013 opinion. *See* AR 499-502, 505-08, 510-13, 515-18, 521-25, 527-30, 532-35. And as the ALJ points out, Dr. Adolphs's opinion is contradicted by the findings and opinion of Dr. Garrison. *See* AR 467-71; *Batson*, 359 F.3d at 1195 (ALJ need not accept opinion of treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole"). Given that as discussed below the ALJ did not err in discounting

ORDER - 5

plaintiff's credibility, and the lack of objective support for Dr. Adolphs's opinion, the ALJ also did not err in rejecting that opinion on the basis that Dr. Adolphs appeared to rely quite heavily on plaintiff's self-reporting. *Morgan*, 169 F.3d at 602 ("A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'") (quoting *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir.1989)).

B.    Dr. Losee

Plaintiff also challenges the ALJ's following findings concerning the opinion of Melinda Losee, Ph.D.:

> Dr. Losee opined the claimant can understand, remember, and carry out instructions, even though he experiences periods of mildly-impaired concentration. Ex. 5F/3. She opined he can adapt to changes in the work setting. However, Dr. Losee further opined the claimant cannot handle the normal pressures of a work setting or complete a normal workday due to interruptions from his psychological symptoms. She indicated he will have difficulty interacting appropriately with others. Ex. 5F/3-4. These opined limitations are not consistent with Dr. Losee's mental status findings, which showed the claimant was socially appropriate, made good eye contact, had normal speech, could spell "world" correctly backward, could interpret proverbs, had intact memory functioning, had average intellectual functioning, and had adequate insight and judgment. Indeed, the only impairment Dr. Losee noted in her examination was regarding concentration, but even she described his concentration as "mildly impaired." Ex. 5F/3. Thus, it appears that Dr. Losee must have relied quite heavily on the claimant's self-reporting, but I have already found the claimant is not fully credible. For those reasons, I give this opinion little weight.

AR 35-36. Here too plaintiff argues the ALJ's stated reasons for rejecting Dr. Losee's opinion are not sufficient. Again, the Court disagrees. As with the opinion of Dr. Adolphs, the clinical findings Dr. Losee obtained do not support the severity of functional limitation she assessed. *See* AR 462-65; *Batson*, 359 F.3d at 1195. Accordingly, while it is true that "[a] patient's report of complaints, or history, is an essential diagnostic tool" (*Green-Younger v. Barnhart*, 335 F.3d 99,

107 (2nd Cir. 2003) (quoting *Flanery v. Chater*, 112 F.3d 346, 350 (8th Cir.1997))), where there is a lack of objective clinical support for a medical source's opined limitations and the claimant's subjective complaints are properly discounted, an ALJ is not remiss in rejecting that source's opinion on this basis (*Morgan*, 169 F.3d at 602). The Court thus finds the ALJ did not err here.

C.   Dr. Parker

Finally in terms of the medical opinion evidence in the record, plaintiff finds fault with the ALJ's evaluation of the opinion of James Parker, M.D.:

> Dr. Parker opined the claimant's primary issue is chronic pain. Ex. 2F/4. He opined the claimant cannot perform simple, repetitive tasks at a slow pace. However, this opinion contrasts greatly with his mental status testing results demonstrating intact orientation, recent memory, and concentration. Ex. 2F/3-4. Indeed, as Dr. Parker's opined limitations are not consistent with his objective findings, he must have relied quite heavily on the claimant's self-reporting. However, as explained earlier in this decision, I find the claimant is not fully credible. In addition, the record shows that, even though the claimant has current medical coverage, he is not pursuing mental health counseling, which suggests that his symptoms are not as severe as he has reported. For all of these reasons, Dr. Parker's opinion is given little weight.

AR 35. For the same reasons discussed above in regard to the opinions of Dr. Adolphs and Dr. Losee, however, the Court finds the ALJ did not err in rejecting Dr. Parker's opinion, as again the largely unremarkable findings contained in Dr. Parker's evaluation report along with the ALJ's adverse credibility determination supports the ALJ's determination here. *See* AR 452-55; *Batson*, 359 F.3d at 1195; *Morgan*, 169 F.3d at 602. While as plaintiff points out the mental status examination Dr. Parker performed does contain some abnormal findings, those abnormal findings hardly support the severity of limitations assessed by Dr. Parker, and the majority of such findings were for the most part normal. AR 454-55. To the extent there was some conflict in these findings, furthermore, it is solely the duty of the ALJ to resolve them, and therefore the Court must uphold the ALJ's resolution thereof. *Morgan*, 169 F.3d at 601; *Reddick*, 157 F.3d at

1    722; *Sample*, 694 F.2d at 642.

2    II.    The ALJ's Assessment of Plaintiff's Credibility

3           Questions of credibility are solely within the control of the ALJ. *Sample*, 694 F.2d at 642.

4    The Court should not "second-guess" this credibility determination. *Allen*, 749 F.2d at 580. In

5    addition, the Court may not reverse a credibility determination where that determination is based

6    on contradictory or ambiguous evidence. *Id.* at 579. That some of the reasons for discrediting a

7    claimant's testimony should properly be discounted does not render the ALJ's determination

8    invalid, as long as that determination is supported by substantial evidence. *Tonapetyan* , 242 F.3d

9    at 1148.

10          To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

11   reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted). The ALJ "must identify what

12   testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also*

13   *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the

14   claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear

15   and convincing." *Lester*, 81 F.2d at 834. The evidence as a whole must support a finding of

16   malingering. *O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).

17          In determining a claimant's credibility, the ALJ may consider "ordinary techniques of

18   credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

19   symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273,

20   1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of

21   physicians and other third parties regarding the nature, onset, duration, and frequency of

22   symptoms. *See id.*

23          The ALJ in this case discounted plaintiff's credibility for the following reasons:

ORDER - 8

First, the objective medical evidence and treatment record do not support the claimant's allegations. The majority of mental status results throughout the record have been unremarkable. The claimant has pursued no mental health counseling, and has never been hospitalized on a psychiatric basis. In addition, regarding his physical complaints, Drs. Garrison and Adolphs noted repeated normal physical examinations with minimal findings. Indeed, the claimant's functioning at his initial Seattle Pain Center visit . . . appears to have been somewhat of an anomaly, because, at his next visit . . . he was ambulating normally with no assistive device. The claimant's description of the severity of his pain has been so extreme that it is out of proportion not only to objective findings but also to logic.

Additionally, the claimant admitted that he had pain and depression during the time he worked as a customer service representative at Comcast. *See* Exs. 2F; 5F/1-2. The vocational expert classified this job as skilled work, per the Dictionary of Occupational Titles. While the claimant alleges he is no longer able to work due to his impairments, the evidence suggests that he was not only able to sustain full-time work with his alleged limitations, but also able to perform skilled work far beyond the scope of his complaints. Likewise, as there is no persuasive evidence that the claimant's condition has significantly worsened since he stopped working, the record strongly suggests that his impairments would not prevent current work. Furthermore, I note the claimant reported to one provider that he stopped working because he had to move, and not because of any allegedly disabling impairment.

Next, the claimant's reported activities cast doubt on his allegations. For example, at [the] hearing the claimant testified he can do laundry, walk around the property, cook dinner once per week, and participate in family dinners multiple times per week. This is, however, inconsistent with his testimony that he has difficulty being around others and with [his girlfriend's] reporting that he is nearly dependent on his cane. The record further shows the claimant is able to care for three dogs, perform housework, go grocery shopping, go to a diabetes class, and ride a lawnmower. In addition, he was able to attend to carbohydrate counting and exercise to such an extent that he lost forty pounds towards the beginning of 2013. That the claimant was able to perform activities that require physical, mental, and social demands undermines his claim of totally disabling functional limitations.

Finally, the record contains inconsistent statements, including allegations that appear to be exaggerated in comparison with medical evidence. For example, Dr. Garrison noted that the claimant could fully bend over in order to tie shoes but failed to do so during examination; that he responded to touch at control points; and that he had positive Waddell signs. In addition, there is inconsistent  reporting throughout the record not only regarding marijuana use but also regarding the reasons why the claimant stopped working at Comcast. Lastly, the claimant reported to nearly every provider that he was trying to get

ORDER - 9

on disability, which suggests that he may have been consciously portraying limitations not actually present in order to increase his chance of obtaining benefits. Inconsistencies, such as these examples, seriously damage the claimant's credibility.

AR 33-34. Further, the ALJ noted the record shows that even though plaintiff had "current medical coverage," he did not pursue medical health counseling, suggesting that his symptoms were "not as severe as he has reported." AR 35. All but two of these constitute valid reasons for finding a claimant's subjective complaints to be less than fully credible. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ in discounting claimant's credibility in part due to lack of consistent treatment, and noting that fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ properly discounted claimant's credibility in part due to fact that he left his job for reasons other than his alleged impairment); *Tonapetyan*, 242 F.3d at 1148 (ALJ properly discredited claimant's testimony in part based on "her tendency to exaggerate"); *Meanal v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe and claimant's failure to request serious medical treatment for supposedly excruciating pain); *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998) (determination that claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement).

The Court does agree with plaintiff that the fact that he may have told his treatment providers that he wanted to get on disability does not by itself necessarily reflect adversely on his credibility, as the record fails to clearly show this was done as part of an attempt to deceive. The Court also agrees that the record fails to show plaintiff engaged in activities of daily living either at a frequency or to an extent that necessarily indicates they are transferable to a work setting or

ORDER - 10

that they otherwise contradict his other testimony. *See* AR 65-68, 70-71, 261-65, 287-91, 326-33, 337-42, 352, 355, 358, 368, 454; *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Smolen*, 80 F.3d at 1284 n.7. Plaintiff further argues that in discounting his credibility due to inconsistency with the medical evidence, the ALJ was "cherry picking" and ignored treatment notes indicating the presence of impairments supportive of his subjective complaints. Dkt. 14, p. 11. But the mere existence of a condition or impairment is, without more, insufficient to establish disability (*Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)), and as discussed above the ALJ did not err in evaluating the medical evidence in the record overall.

As also discussed above, not all of the ALJ's stated reasons for discounting plaintiff's credibility are valid. Nevertheless, even though some of those reasons were improper, the ALJ's credibility determination is still valid, given that it is supported by substantial evidence in the record for the other proper reasons noted herein. *Tonapetyan*, 242 F.3d at 1148; *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (although ALJ relied on improper reason for discounting claimant's credibility, he presented other valid, independent bases for doing so, each with "ample support in the record").

III.    The ALJ's Assessment of Plaintiff's Residual Functional Capacity

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520, § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the evaluation process ends. *Id.* If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-

ORDER - 11

related activities." Social Security Ruling 96-8p, 1996 WL 374184, at *2. A claimant's RFC assessment is used at step four of the sequential disability evaluation process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. *Id.*

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." *Id.* It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *Id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ in this case found plaintiff had the residual functional capacity:

**to perform light work . . . The claimant can lift/carry twenty pounds occasionally and ten pounds frequently. The claimant can stand/walk for about five to six hours out of an eight-hour workday. The claimant can sit for about six hours out of an eight-hour workday. The claimant can have limited contact with the public. He can perform no teamwork activities and must work independently. The claimant can perform no fine reading or fine detail work.**

AR 28 (emphasis in original). Plaintiff argues that given the ALJ's errors in evaluating the medical evidence in the record and in assessing his credibility, this RFC assessment does not completely and accurately describe all of his functional limitations and therefore is not supported by substantial evidence. But because as discussed above the ALJ did not so err, here too the ALJ's findings are free of error.

ORDER - 12

IV.     The ALJ's Step Five Determination

    If a claimant cannot perform his or her past relevant work, at step five of the sequential

disability evaluation process, the ALJ must show there are a significant number of jobs in the

national economy the claimant is able to do. *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th

Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the

testimony of a vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000);

*Tackett*, 180 F.3d at 1100-1101.

    An ALJ's findings will be upheld if the weight of the medical evidence supports the

hypothetical posed by the ALJ. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987);

*Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony

therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *See*

*Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the

claimant's disability "must be accurate, detailed, and supported by the medical record." *Id.*

(citations omitted). The ALJ, however, may omit from that description those limitations he or

she finds do not exist. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

    At the hearing, the ALJ posed a hypothetical question to the vocational expert containing

substantially the same limitations as the ALJ included in his assessment of plaintiff's RFC. AR

75-76. In response thereto, the vocational expert testified that an individual with those limitations

– and with the same age, education and work experience as plaintiff – would be able to perform

other jobs. *Id.* Based on the testimony of the vocational expert, the ALJ found plaintiff would be

capable of performing other jobs existing in significant numbers in the national economy. AR

37-38. Plaintiff argues the ALJ's errors in evaluating the medical evidence in the record and in

assessing his credibility make his step five determination unsupportable. Again, however, given

ORDER - 13

1   that the ALJ did not so err, that determination also is not improper and must be upheld.

2   <u>CONCLUSION</u>

3   Based on the foregoing discussion, the Court finds the ALJ properly concluded plaintiff

4   was not disabled. Accordingly, defendant's decision to deny benefits is AFFIRMED.

5   DATED this 14th day of December, 2015.

Karen L. Strombom
United States Magistrate Judge

ORDER - 14